UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHADOW LAKE MANAGEMENT** | * | **CIVIL ACTION NO. 06-4357** |
| **COMPANY, INC. and** | * | **C/W 06-4358** |
| **RELAIS ESPLANADE, L.L.C.** | * | **C/W 06-4359    "ALL CASES"** |
| | * | **C/W 06-4360** |
| **VERSUS** | * | **C/W 06-4428** |
| | * | |
| | * | **SECTION "C"** |
| **LANDMARK AMERICAN** | * | |
| **INSURANCE COMPANY** | * | **MAGISTRATE: (1)** |
| | * | |

* * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION IN LIMINE TO STRIKE DEFENDANT'S WITNESS
AND IMPROPERLY WITHHELD DOCUMENTS OR
ALTERNATIVELY CONTINUE TRIAL**

**MAY IT PLEASE THE COURT**:

Plaintiffs in this consolidated matter, Shadow Lake Management Company, Inc ("SLM"); Relais Esplanade, L.L.C. ("Relais"); Parc Fontaine Apartments, a Louisiana Partnership in Commendam ("PFA"); Parc Fontaine II Apartments, a Louisiana Partnership in Commendam ("PFAII"); Carol Sue Apartments, A Louisiana Partnership ("Carol Sue"); and Linlake Ventures, A Louisiana Partnership ("Linlake") (hereinafter collectively referred to as "Plaintiffs"), respectfully request this Court exclude representatives of Engle Martin & Associates ("EMA") from testifying in this matter and to rule inadmissible certain documents (known hereafter as "Withheld Documents") in the possession of EMA or the insurer who retained it, defendant Landmark American Insurance Company ("LAIC"), which were withheld from timely production until July 25, 2007 (*i.e.*, 1 week ago), despite their being subject to production by

129523.2

LAIC on or before March 6, 2007 (30 days after LAIC was served with Plaintiffs' Request For Production of Documents). These newly produced documents (which still do not include all that LAIC has to produce based upon the deposition testimony of LAIC's representative) consist of 1750 pages, ***nearly three times the amount of documents LAIC previously produced!***

Plaintiffs make this request because despite the deadlines set forth in this Court's Scheduling Order of December 20, 2006 and their extension via this Court's June 12, 2007 Scheduling Order, Plaintiffs have only recently, on the eve of the discovery cut off and beyond the deadline for expert reports, received the detailed room by room analysis of EMA. Similar documents generated by Plaintiffs' own independent adjusters, The Greenspan, Inc./Adjusters International ("Greenspan"), were the subject of extensive deposition interrogation by LAIC's attorney during depositions of Greenspan employees as well as employees/representatives of Plaintiffs. During the entirety of their depositions and LAIC's counsel's interrogations therein, LAIC was withholding the identical type of documents generated by its adjusters, EMA. LAIC's belated production of these documents, deemed critical by LAIC, has caused undue prejudice to Plaintiffs in that they will be unable to even review this detailed room by room analysis (consisting of 1,683 pages) prior to the August 6, 2007, discovery cutoff. In fact, when Plaintiffs' counsel received these documents from LAIC on July 25, 2007, there were no available dates among counsel in this matter on which to re-depose defendant with these documents in hand. In fact, defendant's representative was deposed on July 10, 2007 in Atlanta, Georgia. It is precisely for this reason that Plaintiffs Request For Production of Documents included the Withheld Documents and was propounded so early in this proceeding. Clearly,

Plaintiffs are entitled to avoid such prejudice and that is why Plaintiffs availed themselves of the Federal Rules of Civil Procedure ("Rules") permitting discovery.

In the alternative, should this Court find that it will admit the Withheld Documents and permit the testimony of EMA's representatives, Plaintiffs reluctantly request a continuance of both the trial and the discovery period so that they may fully digest the untimely produced detailed analysis of EMA. The Plaintiffs remind the Court that defendant previously requested a continuance of the trial in this matter. Over Plaintiffs' strenuous objections, because they claim an additional $26.5 million in damages from defendant, this Court continued the previously set trial.

## I. Background

Plaintiffs are the owners of apartment complexes located in the Parishes of Orleans and Jefferson and the management company (SLM) retained to operate said apartment complexes. On or about August 29, 2005, Hurricane Katrina struck Louisiana, including the Parishes of Orleans and Jefferson, causing un-paralleled casualties to the state's citizens and their property. More specifically, in the instant consolidated cases Hurricane Katrina caused massive losses to the subject apartment complexes, all of said complexes being covered by a primary layer of insurance issued by Aspen Specialty Insurance Company ("Aspen") (with limits of $5,000,000.00) and having an excess insurance policy issued by LAIC (with limits of $44,940,800.00). To date, the primary insurer (Aspen) has paid its full policy limits.

In the nearly two years since Katrina ravaged this state, Plaintiffs' excess insurer has issued only two payments in the relatively paltry amounts of $933,228.08 on March 17, 2007,

and $896,532.09 on July 13, 2007, to cover losses sustained by the Plaintiffs. LAIC, incredibly, asserts that this combined payment of $1,829,760.17 is sufficient to repair the 1,241 units, or 1,027,769 square feet worth, of rentable property.

Because of the perverse failure of LAIC to fairly and timely adjust the losses sustained by the apartment complexes[1], repairs have yet to be fully completed. Where at one point after the storm every apartment complex subject to this suit had a waiting list of residents wanting to rent property, those waiting lists have either decreased or disappeared altogether as repairs could not be fully made with the trifling sums paid by LAIC for repairs.

To add insult to injury, LAIC has done everything in its power to delay the fair and speedy trial of this matter, therefore further preventing attempts by the Plaintiffs to completely repair their property and resume normal operations.

## II. Tendencies Towards Tardiness

**More Delays than I-10**

The first of these consolidated cases, C.A. No. 06-4357, was filed on August 16, 2006 and was allotted to Section "C" of this Court. Within minutes of this filing, C.A. Nos. 06-4358; 06-4359 and 06-4360 were filed and allotted, respectively, to Sections N, F, and B of this Court; thereafter on August 18, 2006, C.A. No. 06-4428 was filed and allotted to Section L of this Court (hereafter, collectively the "LAIC Cases").

---

[1] Landmark claims, as recently as this month, nearly two years after the storm, that the adjusting of this claim is ongoing. See p. 64 of the July 10, 2007, deposition of Berri Jordan, attached hereto as Exhibit "A".

In what would become the first in a series of events instigated by LAIC which ultimately led to the delay of the trial of these matters, LAIC failed to file responsive pleadings until months after service of the original complaints. In fact, in C.A. No. 06-4358, 06-4360 and 06-4428, three and one-half months after service, the Plaintiffs in each case were forced to move the Clerk of this Court for entry of default before LAIC would respond. This was true even though LAIC admitted that it received a service copy of at least one (i.e. probably more) of the Summons issued in these LAIC cases as early as September, 2006. (See p. 36 of July 10, 2007, deposition of Berri Jordan, attached hereto as Exhibit "A").

LAIC's next blatant delay tactic occurred on December 13, 2006 when LAIC moved to transfer to Section C and consolidate C.A. Nos. 06-4358; 06-4359; 06-4360 and 06-4428 with C.A. No. 06-4357. LAIC's motion to transfer and consolidate was granted on January 17, 2007. On December 19, 2006, with full knowledge of its pending motion to transfer and consolidate the LAIC Cases, LAIC conferred with Section "C" of this Court in the preparation of the Rule 16 Scheduling Order regarding the first-filed LAIC Case (06-4357). Pursuant to that Scheduling Order, this Court set a trial for July 30, 2007; a deadline for Plaintiffs to provide their expert reports of April 12, 2007; a deadline for LAIC to provide its expert report of May 11, 2007; and a discovery cutoff of June 11, 2007. Thereafter, on May 18, 2007, LAIC, lamenting the fact that it was **unable to complete its discovery**, moved to continue both the date of the trial and the deadline for completion of discovery. For LAIC to have filed that motion was particularly ironic as the situation it complained of was created by it. It was LAIC that moved to consolidate the LAIC Cases, participated in the issuance of the Scheduling Order with knowledge that it had

moved to consolidate the LAIC Cases, and then did not notice a single deposition until April 13, 2007. Its motion for continuance, however, was granted by this Court during a telephone status conference on May 22, 2007 and a new trial date (with new corresponding deadlines) was set for September 24, 2007.

### III. Disdain for Discovery Deadlines

This Court, in its December 19, 2006, Scheduling Order, set various deadlines controlling discovery in this matter, including a discovery cut-off of June 11, 2007. In compliance with this Order, Plaintiffs, on February 2, 2007, propounded their first set of Interrogatories and Requests for Production to LAIC. LAIC did not respond to the requested discovery until March 21, 2007, (over two weeks after they were due) at which time it produced materials Bates stamped "PARC-CL-0002" through "PARC-CL-0690."

This limited production on the part of LAIC appeared to Plaintiffs to be deficient in at least two respects. First, LAIC failed to produce the room by room analysis of its expert, despite that fact that even a cursory reading of Plaintiffs' Request for Production would include such a document within its scope. Second, LAIC produced virtually no documents or correspondence generated after early September, 2006, despite the fact that Plaintiffs' own production showed such documents to exist. In addition to the deficient production on the part of LAIC, it failed to comply with this Court's December 19, 2006 Scheduling Order regarding expert reports. This Court's December 19, 2006, Scheduling Order set out that the written reports of experts for LAIC "fully setting forth all matters about which they will testify and the **basis** therefore" shall be obtained and delivered to counsel for Plaintiffs in no event later than May 11, 2007.

(emphasis added). The December 19, 2006 Order stipulated that the Court would "not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits" unless the Court issues an order based on motion for good cause shown.

On May 11, 2007, an eight page document, along with the curriculum vitae of Joel Steber, was produced to Plaintiffs, purporting to be LAIC's expert report. This document consisted of a brief narrative of EMA's findings at all of the Plaintiffs apartment complexes plus a single page containing a schedule of losses for those same properties. Despite the fact that this narrative mentions the existence of substantiating documents forming the basis for its expert report, LAIC saw fit to produce no such documents.

On June 12, 2007, this Court issued its revised Scheduling Order, placing the extended deadline for written reports of experts "fully setting forth all matters about which they will testify and the **basis** therefore" to Plaintiffs no later than July 6, 2007. A revised deadline was also placed on discovery, with the cut-off being extended to August 6, 2007. Despite the opportunity given by this Court to LAIC to rectify deficiencies in both its production and expert reports, LAIC has failed to do either. The extended deadline for submitting expert reports has now passed, and as of July 24, 2007, Plaintiffs were only in possession of the eight page document tendered as LAIC's expert report (with no substantiating documentation).

In the meantime, armed with Plaintiffs' expert reports and their public adjuster's room by room analysis, LAIC's counsel intensely interrogated witnesses about Plaintiffs' expert's room

by room analysis, all the while withholding (even if unintentionally) defendant's expert's room by room analysis (a document which existed at the latest on May 10, 2007).[2]

### IV. LAIC's Deposition

Although these issues were raised in conversations with LAIC's counsel, Plaintiffs were always assured that all materials had been produced. In light of this assertion on the part of LAIC's counsel, it was therefore a shock when on July 10, 2007, in the deposition of LAIC's representative, Berri Jordan ("Jordan"), she referenced several documents which were never produced to Plaintiffs.[3]

LAIC had no probable cause to withhold documentation that was responsive to Plaintiffs' February 2, 2007, production request and which are deemed so critical by LAIC. It is therefore not surprising that inquiries made by Plaintiffs' counsel as to the improperly withheld documents were met with nothing but silence.

### V. Bates Stamps Can't Lie -or- "Cat Got Your Tongue?"

Prior to Jordan's deposition, on June 13, 2007, Plaintiffs' counsel wrote a letter to LAIC's counsel requesting that LAIC confirm that the only documents produced by it were those Bates Stamped "PARC-CL-0002-0690". (This letter is attached as Exhibit "B"). The letter specifically requested that "if any other documents have been produced by Landmark, in response to the

---

[2] In fact, the room by room analysis indicates that it was printed in the first quarter of 2006, more than 1 year prior to its production of Plaintiff!

[3] In fact, as of this date LAIC has not produced any of the documents referenced by Jordan in her deposition (either EMAs or Landmarks)!

Request for Production of Documents propounded upon it by plaintiffs, please advise immediately." In a silent admission, LAIC's counsel did not respond to this letter.

Still suspicious, one month later, on July 13, 2007, Plaintiffs' counsel wrote another letter to LAIC's counsel. (A copy of this letter is attached as Exhibit "C"). This letter inquired as to the now obvious incompleteness of LAIC's production, specifically: 1) documents mentioned by LAIC's representative (Jordan) in her July 10, 2007 deposition; 2) the limited production of documents by LAIC's adjuster (EMA) and 3) the large chronological gap in LAIC's production (virtually no documents were produced that were dated after the beginning of September 2006, including even a copy of the actual check issued by LAIC in March of 2007). Plaintiffs' counsel requested yet again that LAIC, if it believed such documents were produced, provide the Bates Numbers of said documents. Once more, LAIC's counsel remained stonily silent as to the existence of such documents and to the incompleteness of their client's production. On July 20, 2007, Plaintiffs' counsel was forced to inform LAIC's counsel that due to the lack of a response to their June and July correspondence, and in light of a fast approaching discovery cut-off date, a Rule 37.1E conference would be held on July 23, 2007 to discuss the matter. (A copy of this letter is attached hereto as Exhibit "D").

## VI.  The Silence is Broken

On July 23, 2007, the day of the scheduled conference and over a month after the initial correspondence sent by Plaintiffs' counsel (and over five months from when the Withheld Documents should have been produced by LAIC), LAIC's counsel transmitted a letter to Plaintiffs' counsel responding to their "request for additional discovery and/or documentation".

(This letter is attached as Exhibit "E"). The letter reported that LAIC's counsel was "in the process of reviewing" their files and would supplement their discovery if "new information and/or documentation" was identified that was not previously produced.

Plaintiffs did not request "additional discovery" or "new documentation"; they requested documents that should have been produced as responsive to Plaintiffs' February 2, 2007, Request for Production. LAIC's counsel's assertion that they would supplement their discovery if "new information and/or documentation" was identified was equally disingenuous as they were made aware of specific missing documentation through the June and July letters from Plaintiffs' counsel, as well as the deposition of Jordan (LAIC's representative). (See pages 36 and 42 of Jordan's deposition, attached hereto as Exhibit "A").

In his July 23, 2007 letter, LAIC's counsel went on to assert that LAIC had indeed produced the room by room analysis of their expert (EMA) but, incredulously, had not Bates Stamped these documents and implied that Plaintiffs' counsel was "unable to locate them" for that reason. Needless to say, this inaccurate argument was nothing but a feeble attempt to mask LAIC's inadequate discovery responses. Neither Plaintiffs nor their counsel had been provided with any documents which were not Bates-Stamped by LAIC. Despite their assertions that the Withheld Documents had already been produced, LAIC's counsel informed Plaintiffs' counsel that they would be Bates Stamping a copy of the detailed room-by-room analysis of their expert (EMA), and would be forwarding it to Plaintiffs' counsel sometime later that week.

On the very same day that LAIC's counsel sent this letter, they admitted at the scheduled Rule 37.1E conference that they had not actually produced all of the documents responsive to the request for production, and that they were working on obtaining these documents from LAIC.

Finally, on July 26, 2007, Plaintiffs' counsel transmitted a letter to LAIC's counsel which emphatically denied ever having received the detailed room by room analysis of LAIC's expert (EMA), and referencing several documents known by both parties' counsel to be missing from LAIC's production. (A copy of this letter is attached hereto as Exhibit "F"). To date, no response to this letter has been received. The discovery cut-off is Monday, August 6, 2007.

### VII.  The Mystery Package

In the late afternoon of July 25, 2007, nearing the eve of the newly set August 6, 2007, discovery cut-off, a delivery service deposited a package at Plaintiffs' counsel's office. This package was unmarked and no transmittal letter, detailing either the sender or the contents, accompanied it. This package contained a Bates Stamped copy of not only the detailed room by room analysis of LAIC's independent adjuster (EMA), but also a Bates Stamped copy of a detailed report by LAIC's Business Interruption Expert, Matson, Driscoll & Damico, L.L.P. ("MDD"). Together, these Withheld Documents reflect 1,750 pages ( 1,683 from EMA and 67 from MDD) of previously un-produced material, <u>nearly three times the amount of material previously produced!</u>

Thus, after nearly a month of silence and the assertions that Plaintiffs' counsel had misplaced un-Bates-Stamped documents already produced by LAIC, to have these voluminous documents quietly delivered without a valid explanation for this untenable delay is both a slap in

the face to the discovery process and another thinly veiled attempt to prejudice Plaintiffs in the trial of this matter.

## VIII.  Prejudice to Plaintiffs

LAIC has withheld documents which are critical to the issues in this case. Whether it did so intentionally or unintentionally is irrelevant. The fact remains that the documents were not produced in a timely fashion.

To produce over 1,700 pages of documents so late in the game, especially considering that this trial has already been continued once and that LAIC was in possession of these documents when it submitted expert reports on May 11, 2007, is extremely prejudicial to the interests of the Plaintiffs. To be fully prepared to address these detailed reports at trial, Plaintiffs now have to: 1) depose representatives of EMA (an action that Plaintiffs would not have taken given the unsubstantiated document which was actually submitted as LAIC's expert report); 2) determine whether their own experts, Greenspan and Bert Verdigets, have to amend their reports based on the information contained within these voluminous documents[4] and 3) have these things done by the continued discovery cut-off date of August 6, 2007. It is impossible for Plaintiffs to satisfy this third criterion.

Further prejudicing Plaintiffs is the fact that because they produced both their expert reports and substantiating documents timely, LAIC has had months with which to review, respond, and depose witnesses; things which have been denied Plaintiffs' due to LAIC's actions.

---

[4] Plaintiffs will not be seeking fees from defendant for having its experts amend their reports, as this was something that would have been provided for months ago if LAIC hadn't failed to deliver these documents.

## IX.   Ability of Court to Exclude Expert Testimony

LAIC has now violated two separate pre-trial orders by failing to produce the detailed substantiating documents to EMA's report. LAIC has given no explanation for this failure to produce, and in fact has feebly asserted that the materials were produced, but were not Bates Stamped and lost by Plaintiffs. Given the months LAIC has had to prepare its defense to Plaintiffs' detailed expert reports, the prejudice placed on Plaintiffs by LAIC's actions is immense.

LAIC may argue that another continuance would cure this prejudice. This is not the case. The trial of this matter has already been continued. It is nearly two years since Hurricane Katrina ravaged this state and Plaintiffs remain unable to fully repair their property due to the delays caused by LAIC in the trial of this matter. To push the trial of this matter even further back on the busy docket of this Court and Plaintiffs' counsel will cause an immense loss to Plaintiffs in terms of both rental income and legal fees, not to mention affording LAIC more opportunities to both delay the trial of this matter and further develop its case when it already has a several month head-start on Plaintiffs. LAIC already has two strikes against it when it comes to obeying the Scheduling Orders of this Court. It should not be given a chance at a third.

## X. Conclusion

Throughout the course of these matters, LAIC has repeatedly accomplished its true goal, the delay of both the trials (which present roughly a combined $35,000,000.00 in damage claims, before including penalties and attorney fees) and the paying of its insured. Given LAIC's

seeming disregard for the plight of its insured, it is not surprising that the same disdain has been shown for the discovery Rule set by this Court and now the Rules established by Congress.

Plaintiffs are entitled to have this Court strike EMA's representatives witnesses and exclude the Withheld Documents on the basis of:

1) LAIC's production of the detailed estimate of EMA, which was produced neither with the eight page narrative submitted on May 11, 2007 nor within the continued deadline for expert reports;

2) The extreme prejudice which would result to Plaintiffs if LAIC were allowed to present the expert report and testimony of EMA without sufficient time for Plaintiffs' experts to prepare a response to said report and testimony;

3) LAIC's failure to produced documents responsive to Plaintiffs initial February 2, 2007 Request for Production until July 25, 2007, which documents were generated by EMA and which are integral to EMA's expert report.

**Alternatively**

In the alternative, if this Court finds that the repeated failure of LAIC to comply with the deadlines set forth in this Court's Scheduling Orders does not unduly prejudice the Plaintiffs so as to require that EMA's representatives to be stricken as witnesses and the Withheld Documents be deemed inadmissible for the purposes of this trial, Plaintiffs respectfully request that this Court grant a continuance of both the trial date and the discovery deadlines so as to be able to read before the discovery deadline the Withheld Documents (1,750 pages) so recently produced by LAIC.

This is the first request on the part of Plaintiffs for a trial continuance and/or extension of discovery deadline submitted in this matter. In the event that a continuance is not granted, Plaintiffs alternatively request that the timeframe for completing discovery be extended past the current deadline of August 6, 2007.

        Respectfully submitted,

---

Peter J. Butler, Jr. (Bar #18522)
Richard G. Passler (Bar # 21006)
**BREAZEALE, SACHSE & WILSON, L.L.P.**
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70112
Telephone: (504) 584-5454
Facsimile: (504) 584-5452

AND

Peter J. Butler, (Bar #3731)
**PETER J. BUTLER, L.L.C.**
129 Bellemeade Boulevard
Gretna, Louisiana 70056
Telephone: (504) 433-9350

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July _____, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

---

129523.2