**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SHADOW LAKE MANAGEMENT** | * | **CIVIL ACTION NO. 06-4357** |
| **COMPANY, INC. and** | * | **c/w 06-4358; c/w 06-4359;** |
| **RELAIS ESPLANADE, L.L.C.** | * | **c/w 06-4360; c/w 06-4428** |
| | * | |
| **VERSUS** | * | **RELATING SPECIFICALLY TO:** |
| | * | **06-4357** |
| | * | |
| | * | **SECTION "C"** |
| **LANDMARK AMERICAN** | * | |
| **INSURANCE COMPANY** | * | **MAGISTRATE: (1)** |
| | * | |
| | * | **JURY TRIAL REQUESTED** |

* * * * * * * * * * * * * * * * * * * * * * * * *

**SUPPLEMENTAL AND AMENDED COMPLAINT WITH**
**REQUEST FOR JURY TRIAL**

    **NOW INTO COURT** comes **SHADOW LAKE MANAGEMENT COMPANY, INC.**

a Louisiana Corporation, (hereinafter "Shadow Lake") and **RELAIS ESPLANADE, L.L.C.**, a

Louisiana Limited Liability Company (hereinafter "Relais") domiciled and having their principal

place of business in the Parish of Jefferson, State of Louisiana, appearing herein through

undersigned counsel, which represent as follows:

**Defendants**

1.

    Made defendant herein is **LANDMARK AMERICAN INSURANCE COMPANY**

(hereinafter "Landmark"), an insurance company organized and existing under the laws of a state

other than Louisiana, with its principal place of business in Georgia, but which is authorized to do and is doing business in the State of Louisiana.

## **Jurisdiction**

2.

This Court has jurisdiction in this matter pursuant to Title 28, United States Code, Section 1332 in that the plaintiffs are citizens of the State of Louisiana and the amount in controversy exceeds SEVENTY-FIVE THOUSAND AND NO/100 ($75,000.00) DOLLARS, exclusive of interest and costs.

## **Venue**

3.

Venue is proper in this district in that the plaintiffs are Louisiana entities with their principal offices situated in the Parish of Jefferson, State of Louisiana, and the policy issued by defendant herein insured the property of plaintiff, Relais, which is located in this district.

## **Background**

4.

Relais owns an apartment complex located at 1201 West Esplanade Avenue, Kenner, Louisiana, consisting of twenty-two (22) buildings which comprise three hundred thirty-six (336) units and related ancillary buildings and other improvements. All of the buildings in this complex are contiguous to one another and are situated in Jefferson Parish, Louisiana (this apartment complex is sometimes hereinafter referred to as the "Subject Property").

- 2 -

5.

Shadow Lake is an independent contractor which was hired by Relais several years ago to manage this apartment complex. In that capacity, Shadow Lake purchased the policies of insurance insuring this property.

6.

On or about February 1, 2005, Aspen Specialty Insurance Company ("Aspen") issued its policy number PP 002044 to Shadow Lake insuring the following apartment complexes:

a.      Shadow Lake Villas Apartments located at 3320 Wall Boulevard, Gretna, Louisiana;

b.      Relais Esplanade Apartments located at 1201 West Esplanade Avenue, Kenner, Louisiana;

c.      Carol Sue Apartments located at 1732 Carol Sue Boulevard, Gretna, Louisiana; and

d.      Parc Fontaine Apartments located at 3100 – 3200 Rue Parc Fontaine, New Orleans, Louisiana.

7.

Aspen's policy insured all of the above apartment complexes for damages caused by "windstorm, falling objects, and water damage" (not flood waters), as well as damages arising due to Business Interruption and for Extra Expenses. This policy was for the period February 1, 2005 through February 1, 2006 and had policy limits of FIVE MILLION AND NO/100 ($5,000,000.00) DOLLARS. Attached to the Original Complaint filed in this matter is a copy of said policy, which is marked Exhibit "A" .

8.

As the primary insurer of the above referenced properties, Aspen has paid the full amount of its policy, *i.e.* FIVE MILLION AND NO/100 ($5,000.000.00) DOLLARS, to Shadow Lake as the manager of said properties.

9.

Also on February 1, 2005, Landmark issued its excess policy number LHD 339381 to Shadow Lake insuring the above named apartment complexes for damages caused by "windstorm, falling objects, and water damage" (not flood waters), as well as damages arising due to Business Interruption and for Extra Expenses.  This policy was for the period February 1, 2005 through February 1, 2006 and had policy limits of FORTY-FOUR MILLION NINE HUNDRED FORTY THOUSAND EIGHT HUNDRED AND NO/100 ($44,940,800.00) DOLLARS per occurrence.  Attached to the Original Complaint filed in this matter is a copy of said policy, which is marked Exhibit "B" .

10.

Landmark's excess policy number LHD 339381 was an endorsement to policy number PP 002044 issued by Aspen on February 1, 2005.

11.

On or about August 29, 2005, Hurricane Katrina struck the Parish of Jefferson and more particularly the Subject Property causing substantial damage to the physical improvements of the

apartment complex as well as to its contents and furnishings, all of which also resulted in substantial damages due to Business Interruption and Extra Expenses.

12.

The Subject Property, which is located on the east bank of the Mississippi River, did not sustain any damage from rising flood waters; however, it did suffer considerable damages from rain water which soaked some of the sections of the buildings of the complex as well as the contents and furnishings of those sections. These damages were occasioned as a result of wind damage to the roofs, windows, siding, and other sections of the buildings.

13.

Immediately after August 29, 2005, Relais provided Aspen and Landmark with timely notice of Hurricane Katrina and the resulting damages to its apartment complex.

14.

On or about October 26, 2005, Relais' then counsel, the law firm of Heebe & Heebe, retained The Greenspan Co./Adjusters International ("Greenspan"), a public adjusting firm, to assist it in determining the amount of damages caused by Hurricane Katrina to the Subject Property.

15.

On March 30, 2007, Greenspan furnished its Expert Report detailing the physical damage to the Subject Property and the cost of repairs (exclusive of roof damage) which cost was in the amount of FOUR MILLION ONE HUNDRED SIXTY-NINE THOUSAND THREE HUNDRED TWENTY-SEVEN AND NO/100 ($4,169,327.00) DOLLARS.

16.

Relais, through undersigned counsel, hired the firm of Bert F. Verdigets, CPA, L.L.C. ("Verdigets") to assist it in determining the losses arising due to Business Interruption and for Extra Expenses.

17.

On April 12, 2007, Verdigets completed its examination of documents pertaining to the Subject Property's loss of rents and furnished its Expert Report outlining losses due to Business Interruption in the amount of ONE HUNDRED NINETY-NINE THOUSAND SIXTY-SEVEN AND NO/100 ($199,067.00) DOLLARS; immediately thereafter, this report was furnished to Landmark.

18.

Relais, through undersigned counsel, hired Marc J. Dahlman, Inc. ("Dahlman") to assist it in determining the losses arising from damages to the roofs of the Subject Property.

19.

On April 12, 2007, Dahlman completed his examination of the roofs of the Subject Property and furnished his Expert Report outlining losses caused by storm damage to the roofs in the amount of FOUR HUNDRED NINETY-FOUR THOUSAND THREE HUNDRED FORTY-FOUR AND NO/100 ($494,344.00) DOLLARS; immediately thereafter, this report was furnished to Landmark.

20.

The total damages incurred by the Subject Property which were insured under Landmark's Policy amount of FOUR MILLION EIGHT HUNDRED SIXTY-TWO THOUSAND SEVEN HUNDRED THIRTY-EIGHT AND NO/100 ($4,862,738.00) DOLLARS.

21.

Shortly after Hurricane Katrina struck the Subject Property, Landmark retained the adjusting firm of Engle Martin & Associates ("EMA") to adjust all losses incurred by the subject property as a result of that Hurricane, both with respect to physical damage as well as Business Interruption losses.  In addition, EMA was also retained by Landmark to adjust those same losses with respect to the other properties described in Article 6 above.

22.

In August 2006, EMA began writing a report addressed to Landmark, outlining its findings as to the dollar amount of the physical damages to the Subject Property and the losses caused by Business Interruption.

23.

After EMA sent its completed report to Landmark, an employee of Landmark, namely one Berri Jordan, unilaterally lowered certain damage estimates on EMA's report in order to reduce EMA's overall estimate of damages.   Ms. Jordan reduced Landmark's own adjuster's report as to damages without any justifiable reason other than to arbitrarily lower the amount of money which Landmark was obligated to pay under its own adjuster's report.

24.

Ms. Jordan accomplished the above by striking through the damage estimates contained in EMA's report and persuading EMA's representative to lower the amounts of those struck-through figures to lower numbers which were arbitrarily selected by her.   Thereafter, EMA changed its own report to incorporate the "doctored" figures of Ms. Jordan.

25.

Thereafter, on August 31, 2006, Landmark's independent adjuster, EMA, completed its report (with the "doctored changes" referred to above) outlining both physical damages and losses incurred due to business interruption and extra expenses to all of the insureds' properties, including the Subject Property.   This report was furnished to Relais' adjuster, Greenspan, on September 1, 2006.

26.

This August 31, 2006 report of EMA was sent to Greenspan on September 1, 2006, with the full knowledge and consent of Landmark.   Landmark acknowledged, accepted, and approved the contents of this report on August 31, 2006.

27.

However, neither Landmark nor its independent adjuster nor anyone else acting on Landmark's behalf paid or tendered any money or other consideration to Relais (or any other insured under Landmark's policy) until March 14, 2007 when Landmark issued a check to Parc Fontaine Apartment and Hibernia Bank and Greenspan in the amount of NINE HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED TWENTY-EIGHT AND 08/100 ($933,228.08) DOLLARS.

## Count I

28.

Immediately after Hurricane Katrina struck, Relais requested Aspen and Landmark to tour its entire apartment complex and to inspect all of the units in the apartment complex, as well as all other areas in the complex, to determine the physical damage caused by Hurricane Katrina and the resulting monetary damages.

29.

Thereafter, Aspen paid the full amount of its policy, *i.e.* FIVE MILLION AND NO/100 ($5,000,000.00) DOLLARS in satisfaction of the damages to all of the apartment complexes which were insured (referred to in paragraph 6 of this complaint).

30.

In the interim, from September 2005 until approximately May 2006, Landmark's adjuster spent a minimal amount of time at the Subject Property in attempting to ascertain the damages sustained.  Despite repeated requests by Relais to attempt to timely adjust the losses, Landmark's adjuster stated that Landmark had no liability under its policy. In the interim, Relais and its counsel, through Greenspan, inspected every unit in the apartment complex, inspected the **entire** exterior and interior of the complex, and inspected all of the other improvements at the complex.

31.

After deducting the sum of SIX HUNDRED NINETY-EIGHT THOUSAND FIVE HUNDRED AND NO/100 ($698,500.00) DOLLARS, which Shadow Lake had allocated to Relais as its proportionate share of the FIVE MILLION AND NO/100 ($5,000.000.00) DOLLARS paid by Aspen under its primary policy insuring the apartment complexes identified above, Landmark is indebted to Relais in the amount of FOUR MILLION ONE HUNDRED SIXTY-FOUR THOUSAND TWO HUNDRED THIRTY-EIGHT AND NO/100 ($4,164,238.00) DOLLARS ($4,164,238.00 plus $494,344.00 plus $199,067.00 minus $698,500.00).

32.

To date, Landmark has paid only NINE HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED TWENTY EIGHT AND 08/100 ($933,228.08) DOLLARS to Shadow Lake under its policy insuring all of the properties listed in Article 6 above.

33.

Relais' proportionate share of the NINE HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED TWENTY EIGHT AND 08/100 ($933,228.08) DOLLARS paid by Landmark is ONE HUNDRED NINE THOUSAND NINE HUNDRED SIXTEEN AND 54/100 ($109,916.54) DOLLARS.

34.

After deducting the sum of ONE HUNDRED NINE THOUSAND NINE HUNDRED SIXTEEN AND 54/100 ($109,916.54) DOLLARS from the amount of FOUR MILLION ONE HUNDRED SIXTY-FOUR THOUSAND TWO HUNDRED THIRTY-EIGHT AND NO/100 ($4,164,238.00) DOLLARS, Landmark is indebted to Relais in the amount of FOUR MILLION FIFTY-FOUR THOUSAND THREE HUNDRED TWENTY-ONE AND NO/100 ($4,054,321.00) DOLLARS.

35.

As a result of all of the above, with respect to Count I, defendant Landmark owes to Relais and/or Shadow Lake the sum of FOUR MILLION FIFTY-FOUR THOUSAND THREE HUNDRED TWENTY-ONE AND NO/100 ($4,054,321.00) DOLLARS minus any applicable deductible, plus interest thereon, from the date of judicial demand until paid, plus reasonable attorneys' fees and costs.

**Count II**

36.

Relais and Shadow Lake repeat and incorporate into Count II all of the foregoing allegations contained in this Complaint.

37.

Landmark's actions in refusing to pay the NINE HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED TWENTY-EIGHT AND 08/100 ($933,228.08) DOLLARS (of which the sum of $109,916.54 was attributable to Relais) until March 14, 2007, was arbitrary, capricious, and in bad faith because, *inter alia*, Landmark had agreed on August 31, 2006, that there was an undisputed amount due to all of the insured properties (described in Article 6 above) of NINE HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED TWENTY-EIGHT AND 08/100 ($933,228.08) DOLLARS of which at least ONE HUNDRED NINE THOUSAND NINE HUNDRED SIXTEEN AND 54/100 ($109,916.54) DOLLARS was owed to plaintiffs herein.

38.

More than one hundred eighty (180) days have elapsed between the date on which Landmark agreed that the undisputed amount of NINE HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED TWENTY-EIGHT AND 08/100 ($933,228.08) DOLLARS was due under its policy with respect to the properties described in Article 6 above and the date on which it paid any money or other consideration under its policy of insurance.

- 12 -

39.

In addition, at the very least, Landmark's actions in "doctoring" its own supposedly independent adjuster's report to reduce the amount which its own independent adjuster set forth as the amount due with respect to Relais and the other insured properties constitutes an action in bad faith and failure to deal fairly with its insureds.

40.

Pursuant to Louisiana Revised Statutes 22:658, Landmark was obligated to pay to Relais and/or Shadow Lake any undisputed amounts owed to it within thirty (30) days after Landmark approved its own adjuster's written report (dated August 31, 2006) relating to damages and monetary losses to the Subject Property.   Landmark, however, failed to do so.   As a result of that failure, which was arbitrary, capricious, and without probable cause, Landmark is liable to Relais and/or Shadow Lake pursuant to Louisiana Revised Statutes 22:658 for all amounts due under its policy, plus fifty (50%) percent, plus reasonable attorneys' fees.

41.

Pursuant to Louisiana Revised Statutes 22:1220, Landmark was obligated to pay to Relais and/or Shadow Lake any amounts owed to it within sixty (60) days after Landmark approved its own adjuster's written reporter (dated August 31, 2006) relating to damages and monetary losses to the Subject Property.  Landmark, however, failed to do so.   As a result of that failure, which was arbitrary, capricious, and without probable cause, Landmark is liable to Relais and/or Shadow Lake pursuant to Louisiana Revised Statutes 22:1220 for all amounts due under its policy, plus one hundred (100%) percent.

42.

Pursuant to Louisiana Revised Statutes 22:1220, Landmark owed Relais and/or Shadow lake a duty of good faith and fair dealing and had an affirmative duty to adjust their claims fairly and promptly. Because Landmark has breached these duties, as set forth in this Count II, it is liable to Relais and/or Shadow Lake for all amounts due under its policy, plus one hundred (100%) percent.

## **Jury Trial**

43.

Relais and Shadow Lake request a trial by jury.

**WHEREFORE**, Shadow Lake Management Company, Inc. and Relais Esplanade, L.L.C. pray that judgment be rendered herein in their favor and against defendant, Landmark American Insurance Company, as follows:

A.  With respect to Count I, judgment be rendered against Landmark in the amount of FOUR MILLION FIFTY-FOUR THOUSAND THREE HUNDRED TWENTY-ONE AND NO/100 ($4,054,321.00) DOLLARS, less any applicable deductible, plus legal interest thereon from August 29, 2005 until paid, or, alternatively, with legal interest thereon from date of judicial demand until paid, together with all costs incurred in connection herewith;

B.  With respect to Count II, judgment be rendered herein against Landmark  which reflects all of the penalties and multipliers provided by the  Louisiana Statutes set forth herein, plus legal interest thereon from the date on which those penalties

- 14 -

could be imposed, until paid, or, alternatively, from the date of judicial demand, until paid, plus attorneys' fees;

C.      Attorney fees under 35 U.S.C. §285;

D.      All costs of this Action; and

E.      Shadow Lake and Relais have such other and further relief as this Court may deem just and proper.

## **Jury Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution of the United States, Shadow Lake and Relais demand a trial by jury of all issues triable as of right by jury in the above action.

Respectfully submitted:

/s/ *Peter J. Butler*

_____
PETER J. BUTLER, LLC
129 Bellemeade Boulevard
Gretna, Louisiana 70056
Telephone: 504.433.9350
Telecopier: 504.433.9538
               **AND**
Peter J. Butler, Jr. (La. Bar #18522)
Richard G. Passler (La. Bar #21006)
BREAZEALE, SACHSE & WILSON, LLP
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70012
Telephone: 504.584.5454
Telecopier: 504.584.5452

*Counsel for Shadow Lake Management
Company, Inc. and Relais Esplanade, L.L.C.*

- 15 -

## **<u>CERTIFICATE</u>**

I certify that on August 3, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Peter J. Butler*
_____
PETER J. BUTLER