UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHADOW LAKE MANAGEMENT COMPANY INC. and RELAIS ESPLANADE L.L.C.** <br><br> **VERSUS** <br><br> **LANDMARK AMERICAN INSURANCE COMPANY** | **CIVIL ACTION** <br><br> **No. 06-4357** <br><br> **SECTION "C"** |

## ORDER

Before the Court is the motion of Defendant Landmark American Insurance Company ("Landmark") *in limine* to exclude testimony and opinions of Plaintiff Shadow Lake Management Company's ("Shadow") expert, William G. Rake ("Rake"). (Rec. Doc. 141). Having considered the arguments of counsel, the record and the applicable law, the motion is denied.

## I. BACKGROUND

Shadow owns nearly 1,500 apartments contained within four complexes in the greater New Orleans area. (Rec. Doc. 1 at 3). The central issues of this case are: 1) the degree of storm damage sustained to each particular unit at each of the subject complexes; and 2) the costs associated with repairing this damage. Shadow intends to offer the expert testimony of Rake to quantify the costs of repair. Plaintiffs retained the services of Rake and his company, The

1

Greenspan Co./ Adjusters International ("Greenspan"), on or about October 27, 2005 to assist in adjusting the losses to their apartment complexes caused by Hurricane Katrina. Rake, as President of Greenspan, assigned various Greenspan personnel to adjust these losses. (Rec. Doc. 141, Report of William G. Rake). The Greenspan adjusters, via physical inspection of the various apartment complexes, developed loss estimates that were then submitted to Rake. *Id.* Rake used these estimates as the basis for his expert reports. *Id.*

Landmark argues that Rake rendered opinions and conclusions that are void of relevant facts and have no place before the Court. (Rec. Doc. 141 at 1). Landmark further argues that Rake specifically testified in his deposition to having absolutely no personal involvement in the compilation of the information which forms the basis for the expert reports. *Id.* at 2. Additionally, Landmark argues that the data which Rake relies upon has been either lost, thrown away, or permanently misplaced by Greenspan representatives, making it impossible to discern what, if any, Katrina-related damage was occasioned to each particular unit. *Id.* at 3.

In contrast, Shadow argues that Landmark's Motion to Exclude discusses the credibility of the testimony and evidence to be presented by Rake, rather than speaking to the admissibility of his expertise. (Rec. Doc. 161 at 1). Shadow notes that when assessing the admissibility of expert testimony, the Court looks to Fed. R. Evid. 702. Shadow asserts that Rake's expert testimony is both reliable and relevant to the case. *Id.* at 6.

## II. EXPERT WITNESS STANDARD

Federal Rule 702 governs the admissibility of expert testimony and reports. It states:

> If scientific, technical, or other specialized knowledge will

> assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 was amended in 2000 to reflect the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The *Daubert* decision changed the criteria for the admissibility of expert testimony, charging trial courts to act as "gate keepers" to ensure the proffered testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. In *Kumho Tire,* the Supreme Court held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony. *Kumho Tire*, 526 U.S. at 147.

In *Daubert,* the Supreme Court created a two-prong test for trial judges to determine the admissibility of expert testimony. To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. Additionally, both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically

3

valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. Several factors which may be considered in determining the soundness of the scientific methodology include: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards; and (4) whether the theory or technique used has been generally accepted. *Id.* at 593-94. These factors do not constitute a definitive checklist or test. *Kumho Tire*, 526 U.S. at 144. Instead, they compose a nonexclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed. *Id.* The applicability of each factor depends on the particular facts of the case. *Id.*

The second prong, whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 U.S. at 591. *Daubert* described this examination as a question of whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.* (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985).) As noted in *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002), Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Therefore, expert testimony is not relevant, and thus, inadmissable if it is not helpful. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine*, 898 F.2d 448, 450 (5th Cir. 1990). "The Court in *Peters* ruled that it is within the discretion of the trial judge to decide "that the [fact-finder] could adeptly assess the situation using only their common experience and knowledge," and thus exclude expert testimony on that basis. If the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded. *In Re Midland Enterprises, Inc.*, 2002 WL 31780156 at *3 (E.D. La. Dec. 11, 2002).

It is important to note that when expert testimony or reports are challenged under *Daubert,* the Court's role as a gatekeeper does not replace either the traditional adversary system, or the jury's place within the system. *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the *Daubert* court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. *United States v. 14.38 Acres of Land, More or Less S. in County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

**III. ANALYSIS**

Defendant argues that without evidence to support the Plaintiffs' damage estimates, Rake's damage reports and opinions are inadmissible because they have no foundation. (Rec. Doc. 141 at 7). Defendant asserts that a district court may properly exclude the opinions proffered by an expert "if that testimony lacks an adequate foundation or is not based on data 'reasonably relied upon by experts in the particular field.'" *Id.* at 7, 8 (quoting *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308 (5th Cir. 1991) (quoting Fed. R. Evid. 703)). According to Landmark, Rake had limited involvement in the adjustment process and has not offered any evidence, other than the Greenspan adjustments, to support his opinions or reported findings and therefore, Rake's reports and opinions must be excluded. While Defendant's argument may be correct regarding the credibility of Rake's reports and opinions, the Defendant has not provided sufficient authority to support their argument to exclude Rake's expert report under the Federal Rules of Evidence.

In *Hose v. Chicago Northwestern Trans. Co.*, the court held, "the factual basis of an expert opinion goes to the credibility of the testimony not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." 70 F.3d 968, 974 (8th Cir. 1996) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)). Thus, the Defendant's attack on the factual basis of Rake's opinion is not a ground for exclusion. Furthermore, the Court reminds the parties that the Federal Rules of Evidence allow for the admission of an expert's opinion, even when the facts underlying the expert's opinion are not admissible. Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

In creating his export reports and opinions, Rake entered the employee findings into an estimating program called Xactimate. (Rec. Doc. 141, Report of William G. Rake). According to Rake, Xactimate is the most common estimating program in the insurance industry, used by both claimants as well as insurance company adjusters and contractors. *Id.* Matt Goldstein and Daniel D'Ambrosia were the employees responsible for collecting and inputting the data for the Xactimate program. *Id.* Rake asserts that Goldstein has been employed with Greenspan since 1991 and has adjusted "hundreds of claims" during his tenure with the company. *Id.* Rake further notes that D'Ambrosia is a licensed General Contractor who has been in the building industry for thirty years. *Id.*

Because Rake used Xactimate, a program commonly used in the insurance industry, his opinions are sufficiently reliable. Indeed, the Xactimate methodology is reliable under *Daubert*

because inputting the same data into the analysis would reliably result in the same output. Defendant has failed to show that the expert opinions are so fundamentally unsupported that they can offer no assistance to the fact-finder. Defendant's argument regarding data inaccuracies goes more to the weight of the evidence, rather than its admissibility. The Defendant's concerns about the factual basis of Rake's reports and opinions are best resolved by vigorous cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596. Accordingly, Defendant's motion is denied on this ground.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that defendant's motion *in limine* is hereby DENIED (Rec. Doc. 141).

New Orleans, Louisiana, this 17th day of June, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE